PEOPLE ex rel. SPAULDING v. BOARD OF SUP'RS OF SARATOGA COUNTY.

(Supreme Court, Appellate Division, Third Department.    November 13, 1901.)

1. PAUPERS—FINDING HOME FOR INDIGENT CHILDREN—AUTHORITY OF COUNTY SUPERINTENDENT—LICENSE.

Where the board of supervisors authorized the superintendent of the poor to arrange with the agent of a charitable society for placing indigent children in private families at an expense not exceeding a certain sum for each child placed, a bill for services so rendered, assigned to the superintendent of the poor, should not be rejected by the board of supervisors on the ground that the superintendent was not licensed, as required by Laws 1898, c. 264, § 2, making it unlawful for any person or corporation not incorporated under the laws of the state for charitable and benevolent purposes, or a local officer charged with the relief

of the poor, to place out any destitute child. since under Laws 1884, c. 438, § 2, requiring county superintendents to provide for indigent children, such superintendent is an officer within the exception to the statute.

**2. SAME—EMPLOYING UNLICENSED PERSON.**
That the person employed was not licensed was no justification for rejection of the claim, since such person was merely the agent of the superintendent in performance of the duty imposed upon him by Laws 1884, c. 438, § 2, requiring superintendents to provide for indigent children in families or otherwise than in a county poorhouse or almshouse.

**3. SAME—ASSIGNMENT OF CLAIM.**
Where the board of supervisors authorized the county superintendent of the poor to employ a person to procure homes for indigent children at a fixed charge for each child so provided for, the assignment of that person's claim against the county to the superintendent of the poor was not unlawful, under Pen. Code, § 473, making it a misdemeanor for a public officer, authorized to make a contract in his official capacity, to become individually interested in such contract.

**4. SAME—PUBLIC POLICY.**
Where the board of supervisors authorized the county superintendent of the poor to employ a person to assist him in procuring homes for indigent children at a fixed charge for each child, the assignment of such person's claim against the county to the superintendent was not contrary to public policy, since the superintendent was in effect authorized to expend a certain sum for each child placed, and had a legal claim against the county therefor, so that no assignment was necessary.

Appeal from special term, Saratoga county.

Application for writ of mandamus by the people, on the relation of Charles W. Spaulding, against the board of supervisors of Saratoga county. From an order of the special term (70 N. Y. Supp. 1048) denying the writ, relator appeals. Reversed.

At its annual session in 1896 the board of supervisors of Saratoga county passed the following resolution:

"Whereas, Rev. J. W. Maybee, of Syracuse, superintendent for the state of New York of the National Children's Home Society, appeared before this board in behalf of said society, and offered to take the children who are now confined in orphan asylums at the expense of this county, and find proper and suitable homes for such children at a sum not to exceed fifty dollars ($50) each, therefore be it—

"Resolved, that this board recommends to the superintendent of the poor of this county that, whenever practicable, he place all children chargeable to the county in charge of the National Children's Home Society, at an expense not to exceed the sum of fifty dollars ($50) for each child."

In pursuance of such resolution the relator, who was the superintendent of the poor of Saratoga county, employed Maybee, the superintendent of the National Children's Home Society, to find homes for indigent children for whose support the county was chargeable, and for the number so found in which such children were placed in 1897 Maybee presented his bill to the board at its session in that year, and the same was duly audited and paid. At its annual session in 1897 the board of supervisors passed the following resolution:

"Resolved, that Superintendent Spaulding be, and is hereby, authorized to continue the arrangement with Rev. J. W. Maybee for providing homes for indigent children."

Maybee's bill, at the rate of $50 for each indigent child placed in the home found by him, was presented to the board at its session in 1898, and duly audited and paid. At its session in 1898 the board of supervisors passed the same resolution as passed by it the previous year, and at its session in 1899 the bill of Maybee, at the rate of $50 for each indigent child for whom a

home was provided, was audited and paid. At its annual session in 1899 the board passed the following resolution:

"Resolved, that the superintendent of the poor be, and is hereby, authorized to continue the arrangement with Rev. J. W. Maybee for providing suitable homes for indigent children on the same terms as former years."

The resolution further provided that the superintendent should thereafter furnish the board on the first day of its annual session a list containing the names and ages of the children put out, and other facts in respect to them. At its annual session in 1900 three bills, verified by Maybee and assigned on the days of their verification to the relator, amounting in the aggregate to $1,026, for securing 20 homes for indigent children since November, 1899, at $50 each, and $26 for expenses incurred in taking and returning two such children at the request of the superintendent, were presented to the board of supervisors. An error of $50 was found in one of these bills, which, with the consent of Maybee and the relator, was deducted from the aggregate, and, on the report of the committee to whom the bills were referred, the bills, after deducting said $50, were duly audited and allowed by the board. Thereafter the board reconsidered the audit of these bills, and they were referred to another committee, who reported against their allowance. Thereupon each of the bills was rejected and disallowed by the board, with the following statement indorsed thereon: "Rejected; not properly itemized. The claimant not licensed by the state board of charities. The claimant not acting for any corporation or society approved by state board of charities." Thereafter an application was made for a writ of peremptory mandamus, commanding the board to reconvene, audit, and allow these claims. From the order denying the motion for such writ, and from the judgment entered thereon, this appeal is taken.

Argued before PARKER, P. J., and SMITH, KELLOGG, EDWARDS, and CHASE, JJ.

Horace E. McKnight (Edgar T. Brackett, of counsel), for appellant.

William D. McNulty, for respondent.

EDWARDS, J. The ground for the rejection of the claims by the board of supervisors, that the claimant was not licensed by the state board of charities, is untenable. The provision of the statute requiring a license is as follows:

"It is hereby made unlawful for any person or corporation, other than a charitable or benevolent institution, society or association, or society for the prevention of cruelty to children, now or hereafter duly incorporated under the laws of this state, or a local officer charged with the relief of the poor and placing out in the manner now provided by law, to place out any destitute child, directly or indirectly, unless such person or corporation shall be duly licensed, as hereinafter provided, by the state board of charities, to place out destitute children." Laws 1898, c. 264, § 2.

If by the phrase "the claimant not licensed" the board of supervisors had reference to the relator, who was the superintendent of the poor, it is clear that he was within the exception of the statute,—"a local officer charged with the relief of the poor." He is an officer upon whom the statute imposes the duty of providing homes in families for indigent children. Section 2 of chapter 438 of the Laws of 1884, which prohibits the sending of children between the ages of 2 and 16 years, as paupers, to any county poorhouse, or almshouse, or the detention therein of such children, for support, requires that "county superintendents, overseers of the poor, boards of charities or other officers shall provide for such child or children, in families,

orphan asylums, hospitals, or other appropriate institutions, as provided by law." Section 1 of the act requiring a license in certain cases (Laws 1898, c. 264) defines the term "place out" to be "the placing of a destitute child in a family, other than that of a relative within the second degree, for the purpose of providing a home for such child." It is evident that the placing out in families of indigent children chargeable to the county is one of the official duties of the superintendent of the poor.

Nor did the duties of Maybee, under his contract, require a license from the state board of charities. His employment under the resolutions of the board of supervisors was simply to find homes for the indigent children with whose support the county was chargeable, and the superintendent, in pursuance of his statutory duty, "placed out" such children in such homes, in the exercise of the discretion which the law confided to him. Maybee had no legal authority to place them out. It was a pecuniary benefit to the county to place indigent children in suitable homes, and to be relieved from the further charge of such children other than the expense attending the placing of them in homes; and in view of the fact that it was impracticable for the superintendent of the poor, having various duties to perform, to seek throughout the state for suitable homes in which such children could be placed, I think that the reasonable interpretation of the resolutions is that the superintendent of the poor was thereby authorized to procure the assistance of Maybee, who was supposed to possess superior facilities for finding such homes, to aid the superintendent in the discharge of his official duty, and for that purpose to authorize an expenditure of money not exceeding $50 for each indigent child for whom the superintendent, through the aid of Maybee, should provide a suitable home. In other words, Maybee was simply an assistant to the superintendent of the poor, provided by the board of supervisors, who appropriated $50 to defray expenses incurred by the superintendent in procuring homes for indigent children. It was simply an authority by the board of supervisors for the expenditure of a sum not exceeding $50 by the superintendent of the poor for each indigent child placed by him in a suitable home in pursuance of his statutory duty. This was an arrangement which it was clearly competent for the board of supervisors to make.

The assignment of Maybee's claims to the relator did not bring him within the condemnation of section 473 of the Penal Code, as contended by the respondent. That section makes it a misdemeanor for a public officer, authorized to make a contract in his official capacity, to voluntarily become interested individually in such contract. It prevents an officer from making a contract in his official capacity with himself as an individual, or from participating in the benefits of a contract made by him officially. The statute, regarding the infirmity of human nature, was designed to guard against the danger to the public from a conflict between individual interest and official duty. The relator is not within the language or spirit of that section.

Nor were the assignments to the relator of the claims of Maybee in contravention of public policy. No assignments were necessary. The relator, as superintendent of the poor, was authorized to expend

not exceeding $50 for eacn indigent child chargeable to the county placed in a suitable home, found by Maybee. Under his authority, he could have expended this sum for each child and have a legal claim against the county for reimbursement. This was, in effect, what was done. The arrangement between him and Maybee was substantially the same as if the relator had paid Maybee and had presented a claim in his own name to the board of supervisors for reimbursement. That could not fall under the condemnation of being against public policy. The formal assignment to him of Maybee's claim did not put him in any different relation to the county than he would have occupied if he had paid Maybee for his services and presented his claim, under the resolution, to the board of supervisors for expenses. It was a matter of form, rather than of substance, and does not bring him within any principle of law prohibiting his recovery against the county.

I am of opinion that the order and judgment appealed from should be reversed, and the relator's motion for a peremptory writ of mandamus should be granted, requiring the board of supervisors to reconvene and to audit and allow the claims at such sums as are proper.

Judgment and order reversed on the law and facts, with $10 costs and disbursements, and motion for writ of peremptory mandamus granted, with $50 costs. All concur.